IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| SPIRE STL PIPELINE, LLC, | ) |
|---|---|
| Plaintiff, | ) |
| vs. | ) Case No. 3:18-CV-1502-NJR-SCW |
| GERALD SCOTT TURMAN, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is before the Court on the Motion for Preliminary Injunction for Immediate Possession of Defendants' properties filed by Plaintiff Spire STL Pipeline, LLC ("Spire STL") (Doc. 97). For the reasons set forth below, the motion for preliminary injunction is granted.

### BACKGROUND

Spire STL is a pipeline company that transports natural gas (Doc. 100-2, ¶ 4).[1] On August 3, 2018, the Federal Energy Regulatory Commission (FERC) granted Spire STL a Certificate of Public Convenience and Necessity ("FERC Certificate") to build a new, 65-mile, natural gas pipeline (*Id.*, ¶ 8). The 24-inch diameter pipeline will connect with the Rockies Express Pipeline in Scott County, Illinois, and travel through Greene and Jersey counties in Illinois and St. Charles and St. Louis counties in Missouri before ending at the

---

[1] Spire STL is distinct from Spire Missouri, the utility company formerly known as Laclede Gas Company that distributes natural gas to 650,000 customers in the St. Louis metropolitan area. Spire Missouri is a customer of Spire STL (Doc. 100-11).

Chain of Rocks city gate in North St. Louis County (*Id.*, ¶ 4). Whereas more than 80 percent of Spire Missouri's natural gas supply currently comes from a pipeline located along the New Madrid fault and operated by a competitor of Spire STL, the new pipeline will allow Spire STL to provide reliable access to the abundant natural gas supply basins in the Appalachian region (Doc. 100-10, ¶ 11)

The FERC Certificate specifies the pipeline route that Spire STL must take and requires that construction be completed by August 3, 2020 (*Id.*, ¶ 8; Doc. 1-1). Construction of the pipeline is expected to take seven months and will require horizontal directional drilling (HDD) to cross under the Mississippi River, the Missouri River, Spanish Lake Park, and Highway 67 in Missouri (*Id.*, ¶¶ 11, 22). After a bidding process, Spire STL selected Michels Corporation ("Michels") as the general contractor for the pipeline project, as Michels is the premier HDD company and one of the most reputable contractors for a pipeline project of this magnitude (*Id.*, ¶¶ 10, 13). Indeed, every bid for general contractor included Michels as a subcontractor for the required HDD work (*Id.*, ¶ 12). As general contractor, Michels has subcontracted with its own HDD division for the drilling work.

The contract between Spire STL and Michels requires a mobilization date of December 15, 2018 (*Id.*, ¶ 15). Michels has informed Spire STL that it has other contractual obligations in 2019, and if it is not mobilized by December 15, 2018, Michels will likely terminate the contract (*Id.*). Before Spire STL can mobilize Michels, however, it must first acquire easements on every property along the FERC-approved pipeline route (*Id.*, ¶ 16). Across these properties, Spire STL must obtain a 50-foot wide permanent easement, an

additional 40-foot wide temporary workspace easement during construction, additional temporary workspaces of varying widths as needed during construction, and all rights of ingress, egress, and reasonable access to protect, repair, upkeep, and maintain the pipeline and easements (Doc. 1). After construction of the pipeline is complete, the property owner retains the right to use the surface of the easement, though no structures can be built over the pipeline.

Spire STL has entered into agreements with 70 percent of the landowners for the necessary easement rights. Despite its "good faith offers" for the remaining properties, however, Spire STL asserts it has been unable to acquire them (Doc. 1). Accordingly, Spire STL filed this action on August 15, 2018, seeking condemnation of the remaining properties in Jersey County, Illinois (*Id.*). On October 5, 2018, Spire STL filed a Motion to Confirm Condemnation Authority, asking the Court to confirm its right to condemn Defendants' properties by eminent domain (Doc. 83). Certain Defendants filed a Motion to Strike Spire STL's motion, arguing it was, in essence, a premature motion for summary judgment and, thus, improperly filed before Defendants had even answered the Complaint (Doc. 85). Other than the Motion to Strike, no responses were filed in opposition to the Motion to Confirm Condemnation Authority.

On October 22, 2018, Spire STL filed a Motion for Preliminary Injunction seeking immediate possession of the properties (Doc. 97). The Court held a hearing on December 3, 2018, at which the undersigned verbally granted the Motion to Confirm Condemnation

Authority (Doc. 129).[2] Accordingly, the only question remaining at this point is whether Spire STL is entitled to a preliminary injunction granting it immediate possession of the subject parcels of property.[3]

## DISCUSSION

Numerous courts, including the Seventh Circuit, have recognized that "upon satisfaction of the standard for injunctive relief, authorized pipeline companies holding FERC certificates may be granted immediate possession of property to be condemned prior to a determination of just compensation therefor to permit the commencement of construction on the pipeline." *Guardian Pipeline, L.L.C. v. 295.49 Acres of Land*, No. 08-C-0028, 2008 WL 1751358, at *21 (E.D. Wis. Apr. 11, 2008); *Guardian Pipeline, L.L.C. v. 950.80 Acres of Land*, 210 F.Supp.2d 976, 979 (N.D.Ill.2002) (collecting cases). Thus, to be granted immediate possession of the subject properties before the determination of just compensation, Spire STL must satisfy the requirements for a preliminary injunction. To do so, it must show (1) it has no adequate remedy at law or will suffer irreparable harm if the injunction does not issue; (2) it has some likelihood of success on the merits; (3) the balance of harms is in its favor; and (4) the public interest favors the injunction. *Id.* "There is an inverse relationship between the degree of proof plaintiff must present on the second and third factors: 'The more likely the plaintiff is to win, the less heavily need the balance of harms weigh in his favor; the less likely he is to win, the more need it weigh

---

[2] Because the Court granted Spire STL's Motion to Confirm Condemnation Authority, Defendants' Motion to Strike (Doc. 85) is **DENIED** as moot.
[3] Of course, the issue of just compensation remains to be determined.

in his favor.'" *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (quoting *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386–88 (7th Cir. 1984)).

After considering the parties' briefs, exhibits, supporting declarations, and oral arguments, the Court finds that Spire STL has met the requirements for a preliminary injunction to obtain immediate possession of the subject parcels. Spire STL is "virtually certain" to succeed on the merits of its condemnation action, as it has obtained the required FERC Certificate, and this Court has already confirmed its right to condemn the properties. *Guardian Pipeline*, 2008 WL 1751358, at *21. Thus, the second factor is met.

Spire STL also has demonstrated it will suffer irreparable harm if it does not obtain immediate possession of the properties. The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that there is no adequate remedy at law, the plaintiff can easily wait until the end of trial to get that relief. *Roland Mach. Co.*, 749 F.2d at 386. Only if the plaintiff will suffer irreparable harm in the interim—that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can it obtain a preliminary injunction. *Id.*

Here, if Spire STL does not mobilize Michels by December 15, 2018, there is a substantial likelihood that Michels will terminate the construction contract. While Defendants argue that termination of the contract is not *required* if Michels is not mobilized by that date and that the parties could renegotiate the contract, the practical reality is that Michels will be unavailable to begin the project in the latter half of 2019 given its other contractual obligations (*Id.*, ¶¶ 14-15). And if Michels does terminate the

in his favor.'" *N. Border Pipeline Co. v. 64.111 Acres of Land*, 125 F. Supp. 2d 299, 301 (N.D. Ill. 2000) (quoting *Roland Machinery Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386–88 (7th Cir. 1984)).

After considering the parties' briefs, exhibits, supporting declarations, and oral arguments, the Court finds that Spire STL has met the requirements for a preliminary injunction to obtain immediate possession of the subject parcels. Spire STL is "virtually certain" to succeed on the merits of its condemnation action, as it has obtained the required FERC Certificate, and this Court has already confirmed its right to condemn the properties. *Guardian Pipeline*, 2008 WL 1751358, at *21. Thus, the second factor is met.

Spire STL also has demonstrated it will suffer irreparable harm if it does not obtain immediate possession of the properties. The requirement of irreparable harm is needed to take care of the case where although the ultimate relief that the plaintiff is seeking is equitable, implying that there is no adequate remedy at law, the plaintiff can easily wait until the end of trial to get that relief. *Roland Mach. Co.*, 749 F.2d at 386. Only if the plaintiff will suffer irreparable harm in the interim—that is, harm that cannot be prevented or fully rectified by the final judgment after trial—can it obtain a preliminary injunction. *Id.*

Here, if Spire STL does not mobilize Michels by December 15, 2018, there is a substantial likelihood that Michels will terminate the construction contract. While Defendants argue that termination of the contract is not *required* if Michels is not mobilized by that date and that the parties could renegotiate the contract, the practical reality is that Michels will be unavailable to begin the project in the latter half of 2019 given its other contractual obligations (*Id.*, ¶¶ 14-15). And if Michels does terminate the

contract, Spire STL will be required to rebid the project, which will delay construction by several months (*Id.*, ¶ 15).

In addition to potentially losing its general contractor (and its preferred subcontractor for the complex HDD work, as Michels was included as the HDD subcontractor in every bid for general contractor), a delay in obtaining the properties could push the construction timeline into the spring flood season, which would require construction crews to evacuate and move to tracts not impacted by flooding. These so-called "move-arounds" cost nearly half a million dollars each time the equipment is moved (Doc. 100-2, ¶ 20). For this same reason, Spire STL and Michels cannot simply work around the properties at issue in this lawsuit.

Spire STL also must comply with environmental regulations and restrictions on clearing land as outlined by the U.S. Fish and Wildlife Service (Doc. 1; Doc. 100-2, ¶¶ 40-43). The Indiana bat, an endangered species, typically migrates to trees located in the Spire STL pipeline pathway beginning in late March (Doc. 100-2, ¶ 44). Thus, Spire STL must clear all trees by April 1, 2019, to minimize the impact on the bat's habitat and is prohibited under the FERC Certificate from conducting clearing activities between May 1 and July 31. (*Id.*, ¶¶ 45-46). Likewise, Spire STL must act pursuant to the Illinois Department of Natural Resources Conservation Plan, which requires tree clearing and landscape grading to be complete by spring 2019 to protect the Northern Long-Eared bat, a threatened species, and the Timber Rattlesnake (*Id.*, ¶ 47).

Finally, Spire STL faces irreparable harm with regard to its relationship with investors and the public. Spire STL argues that its parent company, Spire Inc. ("Spire

Energy"), has earned financial support for projects like the Spire STL Pipeline by meeting deadlines and building rapport with investors. Failing to fulfill its representations to investors would jeopardize Spire's reputation and compromise its future projects (Doc. 100-12, ¶ 13). Spire STL also asserts that Spire Energy has a responsibility, as a public entity, to satisfy the representations made to its customers that they would have more affordable natural gas by late 2019 (*Id.*, ¶ 14). While the Court agrees with Defendants that the representations made to investors and the public is a self-created problem, the potential harm to customers is real: If the pipeline is not in service when Spire Missouri's contract with its current provider expires on July 31, 2019, it will be forced to either renew or extend that contract to avoid interruption of service, while at the same time being under contract with Spire STL for the construction of the pipeline (Doc. 100-11, ¶ 9). These duplicate costs will be passed on to customers in the St. Louis region (*Id.*, ¶ 10).

For these reasons, the Court finds that Spire STL will suffer irreparable harm—as will Spire Missouri's customers in the St. Louis metropolitan area—if Spire STL is not granted immediate possession of the subject parcels in order to mobilize Michels by December 15, 2018.

Moving to the third factor, the balance of harms favors Spire STL. As discussed above, Spire STL has millions of dollars on the line with its pipeline project, having invested $63 million to date. If it is not granted immediate possession of the properties by December 15, 2018, and therefore cannot mobilize Michels, the entire project is at risk of failing or becoming financially impractical, resulting in higher costs for the ratepayers

of the St. Louis metropolitan area. Likewise, if the project is not complete by July 31, 2019, ratepayers will see an increase in rates due to Spire Missouri's duplicate costs (*Id.*).

The harm to Defendants, on the other hand, is relatively minor. Certain Defendants argue that if construction takes place during the spring and summer, the income from the largely agricultural properties in this litigation goes unaccounted for. This argument seems to weigh in *favor* of granting the preliminary injunction, as construction currently is set to take place during the winter and early spring, and seeding will be complete by May 1, 2019 (Doc. 100-2, ¶ 15). If the project is delayed, however, restoration efforts may be jeopardized by the St. Louis summer heat and lack of rainfall (*Id.*, ¶ 26).

Defendants also argue that a landowner may need to sell his or her property to pay off a debt but will not be able to do so because a pipeline is being constructed through the owner's prime farmland. But that goes to the issue of just compensation. At the very least, the potential harm to the landowner Defendants will be offset by a bond of two times the appraised values of the easements that Spire STL will be required to deposit with the Clerk of Court, pursuant to Rule 65 (c) of the Federal Rules of Civil Procedure.

Finally, the public interest favors the injunction. The current pipeline runs through the New Madrid fault zone, making it susceptible to earthquakes, while the new pipeline will provide long-term, affordable access to the Appalachian and Rocky Mountain natural gas supply basins (Doc. 100-10, ¶¶ 10-11). George Godat, Vice President of Gas Supply for Spire Missouri, attested that diversifying its natural gas portfolio will result in increased reliability and affordability for residents and businesses in the St. Louis

region (Doc. 110-11, ¶ 6). To that end, Spire STL has entered into a 20-year, fixed-rate agreement with Spire Missouri for transportation for natural gas, which is expected to result in a lower delivered cost of gas to Spire Missouri's 650,000 customers in the St. Louis region (*Id.*, ¶¶ 7-8). As previously discussed, if construction does not begin as planned, Spire Missouri will be required to renew its contract with its current provider, leading to increased costs for ratepayers. For these reasons, the Court finds that an injunction is in the public interest.

## Conclusion

Spire STL holds a FERC Certificate, this Court has affirmed its authority to condemn the subject parcels of property, and it has met the requirements for a preliminary injunction. For these reasons, the Court **GRANTS** Spire STL Pipeline, LLC's Motion for Preliminary Injunction for Immediate Possession (Doc. 97). Spire STL may take physical possession of the subject parcels of property upon depositing with the Clerk of Court a surety bond in the amount of $732,244—twice the combined estimated appraised value of the subject parcels (Doc. 100-1).

**IT IS SO ORDERED.**

DATED: December 12, 2018

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**